The next case this morning is 525-0002 People v. Davis. Arguing for the appellant is Christina Merriman. Arguing for the appellee is Max Watson. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning counsel. Good morning. Ms. Merriman, you represent the defendant in this case? That's correct. You ready to proceed? I am. All right, you may do so. Thank you. May it please the court. We raised 2 arguments in this appeal. First, that the sentencing court erred by refusing to consider relevant mitigating evidence regarding the decedent's violent tendencies. And second, that Derrick's 12-year sentence is excessive. I'd like to focus my time on the first issue concerning the exclusion of evidence at sentencing. Illinois courts have recognized the importance of judges having the fullest information available at sentencing by relaxing the rules of evidence and allowing evidence that would not have been admissible at trial. The only requirement is that evidence be reliable and relevant. Now here, pursuant to a partial plea agreement, Derrick pled guilty to second-degree murder, but there was no agreement as to Derrick's sentence, and the sentencing hearing ended up being highly contentious, with the defense asking for probation and the state asking for the maximum prison sentence. Despite the agreement for second-degree murder, the parties disputed who the initial aggressor was, whether Derrick's conduct was motivated by the need to protect himself and his children, and which statutory mitigating factors applied. That said, the parties did agree about some of the facts leading up to the shooting. It was undisputed that on the evening of the incident, Derrick received a frantic phone call from his teenage daughter, who was yelling and crying on the phone, and told her father that a grown man, who was foaming at the mouth and had bloodshot eyes, had slapped Derrick's other teenage daughter and was chasing all three of his daughters around their mother's house with mace. Derrick immediately went to the house. Now this is when the accounts of the incident begin to diverge. The defense's account was that after Derrick arrived and checked on his daughters, he asked Tavion, the man who had hit his daughter, why he put his hands on her. Tavion then rushed at Derrick, and a fight ensued. When Tavion reached for a liquor bottle, Derrick shot Tavion one time. The state, on the other hand, described the shooting as an execution motivated by jealousy, arguing that Derrick didn't go to the house to protect his daughters, but to commit a crime. To rebut the state's allegation, and to support the defense's account that Tavion was the initial aggressor, the defense offered evidence of Tavion's domestic violence convictions. This included live testimony from a police officer who detailed how Tavion had punched, bit, choked, and tried to gouge out his ex-girlfriend's eyes. But the court excluded all evidence of Tavion's prior domestic violence convictions, finding that it was irrelevant to whether Derrick acted under strong provocation, because Derrick did not have knowledge of these convictions at the time of the offense. But whether Derrick acted under strong provocation was not the only issue at sentencing. The court was required to determine if this proposed evidence was relevant to understanding the circumstances of the offense, and if relevant to other statutory mitigating factors, including whether there were grounds tending to excuse or justify Derrick's conduct, even if not constituting a complete defense. Tavion's violent history was relevant to Derrick's sentencing argument, as it corroborated Derrick and his daughter's account of the incident, the fear in his daughter's voice when she called her father, and the fact that Derrick was not confronted with a peaceful person when he arrived at the house. Just as evidence of a victim's violent character is relevant and admissible at trial to support a self-defense claim, evidence of Tavion's violent tendencies was relevant to Derrick's sentencing argument to show that Tavion was the initial aggressor and that there were grounds tending to excuse or justify his conduct. So all of these are factual issues. Could I ask you what our standard of review is on these issues? Yes, Your Honor. This court is reviewing this error for an abuse of discretion. Given that the rules of evidence are relaxed at sentencing and that this evidence would have been admissible at trial, it certainly should have been admissible at sentencing when offered to show that a lengthy prison sentence is not warranted. Thus, the trial court denied Derrick a fair sentencing hearing by excluding this relevant and mitigating evidence. If Your Honors don't have any additional questions concerning the first issue, I can move on to the second. Justice Hackett? No, thank you. Justice Barberis? No. Okay, Ms. Merriman? The second issue concerns or is that Derrick's 12-year sentence is excessive. Derrick, who was 47 years old at sentencing, was a dedicated father, consistently employed for 30 years, had no violent history, and had lived a law-abiding life for a substantial period of time. His last felony conviction was from over 20 years ago, almost 20 years ago. Derrick accepted responsibility for his actions, expressed sincere remorse at sentencing, and apologized to the decedent's family. Nevertheless, the court declined to sentence Derrick to probation and imposed a 12-year prison sentence, three times the minimum term. But such a lengthy sentence is excessive as the court failed to consider four statutory mitigating factors, and a sentence of eight years over the minimum does not reflect Derrick's high potential for rehabilitation. The court failed to adequately consider that the offense was a result of strong provocation, that there were substantial grounds tending to excuse or justify Derrick's conduct, that the offense was a result of circumstances that were unlikely to reoccur again. That negative impact of a lengthy prison sentence on Derrick's four young daughters, and the abundance of evidence that Derrick could be rehabilitated quickly. The state offered no evidence that Derrick could not be rehabilitated in a short period of time. As a result, Derrick's 12-year sentence is excessive, and we respectfully ask this court to reduce his sentence to a term of seven years. So, at the sentencing hearing, if I recall correctly, the judge focused on the fact that the defendant, and here's where I'm asking for you to clarify this, did the defendant state at his sentencing hearing that he would protect his children in a similar situation going forward? Or did the court assume that because he felt like he has a duty as a father to protect his children, that if a similar circumstance were to arise where his child was assaulted, that he would potentially go out and shoot somebody else? The court didn't go into, you know, explain as much as Your Honor is suggesting, but Derrick did say that he felt as a father that he has a duty to protect his children, which I don't think is a strange feeling to have as a parent. However, where the court went wrong in determining whether these circumstances were to occur again, the statutory factor is whether the offense was a result of circumstances that would reoccur. And here, the circumstances that caused the offense was a grown man who was chasing his daughters with bloodshot eyes, with mace, and had hit his daughter. These are highly unusual circumstances. Those circumstances are unlikely to reoccur. And the court wrongly focused on Derrick's natural desire to want to protect his children and drew the conclusion that this would occur again because of that. But in the 16 years that Derrick had been a father, there had been no allegation that Derrick had ever harmed or threatened to harm someone in the past due to that desire to protect his children. This is the first time something like this had ever occurred, and that is undisputed. And so the court was wrong in its application. It did not apply this factor correctly, perhaps misunderstood what the statutory factor required, and so that is why we're asking this court to find that the trial court erred. Did the court also take into consideration the fact that after Mr. Davis was arrested, he had in his possession another firearm, a different firearm? The court did consider that information. I will note that at the time of sentencing, that allegation was not only unproven but uncharged at the time of sentencing, but the court did consider that. And the court really focused primarily on deterrence and did not actually find that Derrick was a violent individual or anything like that, or that that outweighed other statutory factors like the negative impact on Derrick's children, which is required by the statute. Why have you asked us to reduce it to seven years? Derrick has already spent a substantial period of time in custody, both prior to trial and while serving the sentence. And so we're asking this court under its authority under Rule 615 simply to reduce the sentence to a term of seven years. We believe that he served enough time in custody for this offense, and that would be a sufficient and adequate sentence given the circumstances. If this court would reduce it to seven years, would he be eligible for release then? I believe so. His current, I believe it would place him in a position where IDOC could place him on mandatory supervised release. He is still serving a separate sentence, but in this case, he would be. Okay. Justice Hackett, any questions? No, thank you. Justice Barbers. He's incarcerated on a separate sentence? That's correct. And so obviously this court's decision would not affect that, obviously. And that's not got anything to do with the alleged gun that was found when he was arrested? I believe it was, and that was all discussed at the motion to reconsider sentence. Okay, so in other words, when you said that it was unproven and uncharged, that was at the time of sentencing in this case? Correct. It was charged later? It was charged later. This case reached a final disposition before that case reached a final disposition. Okay. Anything else, Justice Barbers? No, thank you. Justice Hackett? No, thank you. All right. Thank you, Ms. Merriman. You'll have a few minutes after Mr. Watson's argument to rebut what he has to say, if you need that. Mr. Watson, for the state? Yes. May it please the court, counsel? My name is Max Watson. I represent the state in this case. As counsel discussed, there's two issues for the court today. First, whether the court erred in refusing lynch evidence at sentencing. And then the second issue is whether the trial court imposed an excessive sentence. I think, as Justice Barberis mentioned, the standard review here is important to acknowledge. It's an abuse of discretion as to both issues. And with that, this court would need to find that the trial court's decision was arbitrary, fanciful, or that no reasonable person would agree with the decision of the trial court. As to this first issue with whether the trial court erred in declining the lynch evidence at the sentencing hearing, that decision was correct for two main reasons. First, defendant's brief does not direct this court to any case law that clearly states that lynch evidence can be used just for mitigation purposes at a sentencing hearing. Lynch evidence is used at trial to support a self-defense claim, and it comes in under one of two prongs. The first prong being when the defendant had prior knowledge of the victim's violent propensities. Then that evidence may be admitted to make their conduct more reasonable in light of that knowledge. In this case, the defendant had no knowledge of the victim's violent prerogative. His convictions is the evidence that was proposed. The record seems to indicate that he didn't even know who this victim was at the time of the shooting. So, under the first prong, the evidence is not admissible for that reason because he had no prior knowledge. And as the trial court acknowledged, that's where the relevancy issue comes in, is that if the defendant did not know of these prior convictions, how could it have possibly affected his reasonableness in his conduct? The second way lynch evidence comes in is regardless of that defendant's prior knowledge, it goes to bolster their version of events. And in this case, there's no disputed version of events on the record. This was a guilty plea that the defendant took. Pursuant to that, there was a factual basis provided by the state, and that factual basis was not disputed by the defendant. The statements regarding whether the victim may have armed himself with a liquor bottle or any of that came in the defendant's statement in elocution. And those don't qualify as evidence. It is not testimony. The state had no opportunity to cross-examine him when he made those statements. So, that doesn't qualify as a dispute to the version of events. So, the evidence that's... So, there was no trial testimony, or I guess no evidence before the trial court that the victim lunged towards the defendant with a liquor bottle. That was just in his statement of elocution? That's correct. It was just in his statement of elocution. The factual basis says there was clearly an altercation between the defendant and the victim. And the two witnesses that did testify at the sentencing hearing was Officer Pipkins. He arrived after the shooting had occurred, so he had interviewed some witnesses, but he did not actually see the encounter between the two and had no comments as to exactly what occurred other than what he could deduce from the crime scene. There was, you know, some damage to a wall. So, clearly, there was some altercation between them, but he had no knowledge of exactly what happened. The liquor bottle, he had no knowledge of. And the other witness that testified was the defendant's daughter. She remained in her room throughout the altercation. She heard arguing and what she would assume was some type of fight or altercation, but again, she did not see anything that occurred. So, we have no testimony or anything as to what that altercation actually looked like. And what the defendant's trying to do, so even if this evidence could come in under that second prong of Lynch, because he had no knowledge, it would only go to bolster his version of events. But what the defendant's trying to do is bring it in under that prong, but have it relate to the reasonableness of his conduct. In trying to apply it to the mitigation factor, whether there was reasonable grounds for the conduct that doesn't rise to a defense, that's a reasonableness argument. But the evidence clearly can't come in under the first prong, which is where it would relate to. Pursuant to that, there's no way this evidence could come in under either prong of Lynch. And even if it could, defendant's brief doesn't point to anything that says Lynch evidence is used, can be used only in a sentencing hearing. It's a factual basis to bring in to support a self-defense claim. And through the guilty plea, the defendant has already admitted that his conduct was unreasonable. If there are no other questions regarding that first issue, I can move on to the second. Justice Hackett, questions? No, thank you. Justice Barberis? None. All right, Mr. Watson, you may proceed. So the second issue before this court is whether the trial court imposed an excessive sentence. For the most part, I think the state will stand on its brief in regards to detailing each individual mitigation and aggravating factor that was discussed by the trial court. Again, this is reviewed under an abuse of discretion standard, and there's a great deference that's afforded to the trial court in the sentence that's imposed. They're the ones that hear any evidence, and they're in the best position to impose a sentence and decide what the correct amount of years would be. Beyond that, I think I would point to, regarding the mitigating circumstances that were discussed, the trial court went through all of the circumstances and factors that went through. Defendant's brief seems to indicate that the provocation factor was not acknowledged. The trial court stated that they found that there was adequate grounds for provocation in the defendant's actions. Here, there's clearly some type of altercation that occurred as to mitigating factor four with the grounds for defense that do not rise to a valid defense. They found that there was some evidence to support that, but ultimately, it was a closer call than the provocation standard. The need to protect his children, that statement, I believe it may have came in during an interview. I don't think it was discussed. It wasn't made at the trial court. The trial court acknowledged, though, that that was a commendable thing and certainly didn't go against him, but in this situation, it went too far. The defendant legally could not own a firearm because of his felon status. He still had that firearm, and he chose to bring it into the situation knowing that there was going to be some type of altercation. He got a call from his daughter that there was an individual at the home that was acting erratic. Had he not armed himself with that firearm, we would be dealing with a much different circumstance here. Maybe there would have been a battery charge. There could have been something, but certainly, in all likelihood, we wouldn't be dealing with the death of an individual. And as far as the rehabilitation aspect of this, the defendant not only illegally owned the firearm in this situation, but then had a second firearm. Either he had acquired that subsequently or previously owned it, but even after this incident occurred, when he was ultimately arrested, he had a second firearm with him. And based on the prior felonies and his failure to meet some of the probation standards in those, the court felt like, although he had led a law-abiding life, for the most part, he's held a job. Ultimately, there were factors that indicated that he would not be able to abide by a probation standard or ultimately not have these events occur again. And I think the trial court acknowledged that these exact facts may not occur again, but ultimately, that's not the end of the discussion as far as that factor. It looks to whether the defendant could act in a similar manner again. And I can see my time has expired. Can I briefly conclude? Yes, you may. Just for these foregoing reasons, we ask this court affirm the decision to decline the lynch evidence and the sentence imposed on the defendant. All right. Justice Barbera, questions? No, thank you. Justice Hackett? No, thank you. All right. Thank you, Mr. Watson. Ms. Merriman, rebuttal? Thank you, Your Honors. I recognize, we recognize that there is an abuse of discretion standard, but with respect to the first issue concerning the exclusion of evidence, the trial court found that the defense's evidence was not relevant to provocation because Derek did not know of those convictions at the time of the offense. But those were not the only issues at sentencing. And defense counsel specifically throughout all the arguments concerning this evidence stated that the defense was presenting this evidence to show that there were grounds tending to excuse Derek's behavior and that Derek was not the initial aggressor. Indeed, during the initial arguments before the sentencing hearing, all these arguments happened on three different court dates leading up to the sentencing hearing. Counsel even stated, I don't think that the state is willing to agree that Tavion was the initial aggressor. And indeed, the state did not agree to that. And so there was a conflict regarding what happened during this incident, despite the state's contention today. And this evidence would have been admissible at trial. I think it's notable that the state never in its brief said that it would not have been admissible had this case proceeded to trial under Lynch. And evidence that is inadmissible at trial is allowed at sentencing as the rules are relaxed. Indeed, in our brief, we cite to several cases where reviewing courts have affirmed the state's use of evidence that would have been admissible, such as hearsay evidence or unconstitutional statements. Reviewing courts have allowed this evidence to be admitted at sentencing hearings, recognizing that the rules of evidence are relaxed. So here, where Derek's liberty was at stake, the fact that the trial court limited relevant evidence that was probative of a statutory mitigating factor that the court was required to consider really limited his defense argument. I also want to return to the state's contention today that the facts were not in dispute at the sentencing hearing solely because Derek had pled guilty and there was a factual basis. When Derek pled guilty, the state proffered a factual basis to support the charge. And defense counsel agreed that that would be the state's evidence if the case did proceed to trial. That was the extent of the agreement, and that is all that is required for a guilty plea, that there be enough to support the elements of the offense that a defendant's pleading guilty to. But when this case reached a sentencing hearing, despite this agreement for second degree murder, the state argued that this was an execution. That Derek went to the house with a plan to commit a crime. And so Derek was entitled to rebut that evidence and to support his account of the events that he went to the house to protect his daughters. He received a phone call from his teenage daughter that she was being chased around the house with mace along with her younger sister and older sister, and that her older sister had been hit by a grown man with bloodshot eyes and foaming at the mouth. He was entitled to present evidence that when he arrived, he was not presented with a peaceful person. And the defense's evidence that Tavion had two prior convictions for domestic violence, including an incident that a police officer testified about, about trying to gouge out his ex-girlfriend's eyes. And this history of battering women was certainly relevant to the trial court's decision in sentencing Derek, and that there were grounds that tended to excuse his behavior or justify his behavior, even if not a complete defense. And so for those reasons, we asked this court to find that the trial court erred in excluding this evidence, and it was relevant and reliable evidence that should have been permitted at the sentencing hearing. And so we asked this court to consider the excluded evidence when considering Derek's excessive sentence argument, and we asked the court to reduce Derek's sentence to a term of seven years. All right, questions, Justice Barberis? No, thank you. Justice Hackett? No, thank you. All right, does that conclude your argument, Ms. Merriman? Yes, Your Honors. All right, thank you both for your arguments here today. This matter will be taken under advisement, and we will issue an order in due course. Have a great day.